FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2017 JUN -7 FH 4: 51

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

**'17 - CV - 01389**

_____

**MELANIE KNAPP,**
        Plaintiff,

v.

**ACADEMY DISTRICT 20,**
        Defendant.

---

## TITLE VII COMPLAINT

---

### PARTIES

1.  Plaintiff    Melanie Knapp            is a citizen of    The United States of America
    who presently resides at the following address:
                4420 Old Ranch Road, Colorado Springs, CO  80908

    _____

2.  Defendant    Academy District 20, and all named defendants, lives at or is located at the following
    address:    1110 Chapel Hills Drive, Colorado Springs, CO

    _____

Attach a separate page, if necessary, to list additional parties.  **See attached page with additional parties**.

### JURISDICTION

3.  Jurisdiction is asserted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.
    '2000e-5.

4.  Defendant is an employer within the meaning of Title VII.

5.  The alleged unlawful employment practices took place at the following location:   1810 Northgate
    Blvd., Colorado Springs, CO  80921

    _____

(Rev. 07/06)

6.  Jurisdiction also is asserted pursuant to the following statutory authority:

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq and each named defendant is covered by and subject to this.

**ADMINISTRATIVE PROCEDURES**

7.  Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission or other appropriate administrative agency on _February 8, 2016_ (date) regarding the alleged discriminatory conduct by Defendant(s).

8.  Plaintiff received from the Equal Employment Opportunity Commission or other appropriate administrative agency a Notice of Right to Sue the Defendant(s) on _March 9, 2017_ (date). (Please attach to the complaint a copy of the Notice of Right to Sue.)

**NATURE OF THE CASE**

9.  Defendant has discriminated against Plaintiff because of the following: (please check all that apply)

    _____ Race                    __ Color                    _____ Religion

    X Sex                         __ National Origin

    X Other (please specify) _Participation in Federally protected activity, see CCRD Charge_

10. Defendant has discriminated against Plaintiff because of the following: (please check all that apply)

    X Failure to hire

    _____ Failure to promote

    _____ Demotion/discharge from employment

    _____ Other (please specify) _____

(Rev. 07/06)

## FIRST CLAIM FOR RELIEF
## AND SUPPORTING FACTUAL ALLEGATIONS

(Please number your paragraphs and attach any necessary additional pages.
Alternatively, you may attach to the complaint a copy of the charge of discrimination
you submitted to the Equal Employment Opportunity Commission.)

1. In reference to Plaintiff's first claim for relief, regarding failure to hire based on gender, a copy of the Charge of Discrimination is attached.

(Rev. 07/06)                                    3

## SECOND CLAIM FOR RELIEF
## AND SUPPORTING FACTUAL ALLEGATIONS
(Please number your paragraphs and attach any necessary additional pages.)

1. In reference to Plaintiff's Second claim for relief regarding failure to hire based on participation in protected class.

1. Please see attached copy of Charge of Discrimination.

## SUPPORTING FACTUAL ALLEGATIONS

The following facts support "failure to hire based on gender, female" and "failure to hire based on participation in protected activity" allegations in the attached CCRD Charge.

12 The Plaintiff, Melanie Knapp has taught English in all subject areas of "English Language Arts" since 1997 and graduated from Baldwin-Wallace College in 1995 with a degree in English, focusing on teaching--- in which she would use her subject-area expertise with what colleagues describe in letters of recommendation as an obvious "passion" and "talent" for teaching. College transcripts show that she immediately incorporated post-bacceroreate studies in the science of pedagogy into her English degree. She earned the credentials required for her "Teaching License", including hundreds of hours of field experiences, and even more hours as a student teacher before launching, what her resume shows, as her sole career teaching secondary English Language Arts for over 16 years at time that DCC failed to hire her in the open English teaching position

.

13 Ms. Knapp's resume, application, teaching license document, employment history on the job application, additional skills and training indicated on the job application, letters of recommendation and responses to interview questions show that she possessed all of the qualities needed in the vacancy.

14 Instead, D20 hired a male, Jason Slater and the relevant documents used in the hiring process show that Mr. Slater did not possess the required qualities posted in the job announcement.

Nothing on Mr. Slater's resume and application show the qualities required as posted in the job announcement.

15 Nothing on Mr. Slater's resume and application show the qualities required to perform the duties directly related to those determined in the English teaching vacancy posted online. Moreover, Jason Slater's resume and application show that he did not even hold a "Colorado Teaching License".

16 Mr. Slater's resume and application show that he had not completed any post-graduate studies in pedagogy, or any form of "teacher preparation",

17 Yet, D20 hired Mr. Slater to fill the open positon at DCC.

18 The decision-making in the hiring process from the interview to Board approval of the candidate starts with the principal/supervisor selecting the best candidate by following the Superintendent's standard hiring procedure.

19 Dr. David Peak, whom Ms. Knapp reported D20 and the Board for "forging" her "resignation letter" and also "copying and pasting" her signature from page two, to page one to remove her reports of unlawful discrimination and retaliation prior to Board approval of her resignation must approve a candidate selected for hire before the Board approves the hire.

20 If Ms. Knapp was selected for recommendation for hire, Dr. Peak is required to approve her recommendation prior to the Board taking action to hire her.

21 The job announcement for the open position was created to find a replacement for Brian Feathers, an English teacher that held a "Teaching License".

22 Mr. Feather's courses were to be taken over by the candidate hired into the vacancy.

23 Ms. Knapp learned that the candidate that was hired would have to be "ready to go" because the candidate hired into the position would report to DCC for work just two days after being selected.

24 Ms. Knapp told Dr. Terry Bramschreiber, a hiring administrator, that she was "classroom ready" and, relevant documents used in the selection processed showed this, too.

25 At the time of Mr. Feather's resignation, the English Department staff was left with one male.

26 Human Resources Assistant Superintendent Dr. David Peak told the School Board in the fall of 2015 in a report presented by him and Human Resources Director Rick Tanski that "…the Board of a school district shall not enter into an employment contract with any person as a teacher…unless such person holds an initial or professional Teacher's License…" and cited CRS 22-63-201-(1) in the presentation.

27 Mr. Slater's application for employment indicates that he did not hold a "Colorado Teaching License", and Mr. Slater was hired in the open position, but Ms. Knapp, who held a "Colorado Teaching License", as stated on her resume and application, was not hired.

28 Mr. Slater's resume and application show that he did not hold an "Alternative License" at the time of his interview, and at the time of his hire, and did not meet the requirement of the law stated by D20.

29 D20 had to utilize the "alternative licensure" criteria in order to hire Mr. Slater for the open position.

30 D20's Human Resources Director Rick Tanski said that D20 looks at "Alternative Licensure" as the option that allows schools to hire individuals without an initial or professional license into 33 shortage areas, such as hard-to-fill positions.

34 During the relevant time period, D20 hired other individuals not holding initial or professional licenses', but unlike Mr. Slater, they were Special Education and World Language teacher candidates.

35 When Jason Slater, a male, was hired, and Mr. Feathers had left the position, there was a total of one male in English department and nine females.

36 The English Department at DCC was experiencing a shortage of qualified male teachers when Mr. Slater was hired.

37 Mr. Slater's resume and application show that he did not possess any of the required qualifications in the vacancy in the English Department at DCC, yet Mr. Slater was hired to take over this position.

38 39 Ms. Knapp was told she was "very, very strong" that the candidate hired instead of her possessed "experience in some of our electives" and that was the "deciding factor".

40 Ms. Knapp possessed experience in the electives, including literary analysis and all genres, because her resume shows she taught all grade levels and subject areas of English.

41 If D20 did not utilize the "alternative licensure" option, it would have been unlawfully employing Mr. Slater.

42 Prior to the interview for the positon, DCC School Counselor Laura Jeffords told Ms. Knapp that the courses Mr. Feather's had been placed on the schedule to teach for the 2015-16 school

year were: Honors World Literature and Composition, a course for academically advanced students and a continuation of "talented and gifted" programs.

43 World Literature and Composition, both 10th grade level, and

Multicultural Literature.

44 And one "general elective" non-English credit course, Science Fiction Literature.

45 Mr. Slater's resume and application show that he did not possess the qualities required as determined by the vacancy at DCC, but Ms. Knapp possessed the qualities required.

46 District Policies direct that "**only candidates** who meet the necessary qualifications are recommended for employment" , that "…all candidates shall be considered on the basis of their merits, their qualifications, and the needs of the District", the best candidate is the one that meets "…any other criteria required to perform the duties determined by the existing vacancy" (see attached Administrative Policies summary and D20 Policies)

47 Dr. Bramschrieber told Ms. Knapp that she was a "very, very strong candidate" for the open position, and that a "difficult decision" was made to hire "a different candidate".

48 Dr. Bramshcrieber, and Mr. Bailey, both administrators at DCC are evaluated, in part, on hiring decisions they make, and the "evaluation rubric" is used to measure how hiring is done by each of them.

49Dr. Peak told the School Board in a presentation in the fall of 2015 that "hiring is one of the most important responsibilities of principals/supervisors".

50D20 Policy state that "only candidates that are selected by building administrators shall be recommended to Dr. David Peak, HR Assistant Superintendent, the Superintendent Mark

Hatchell, and "ultimately" ...and only then, can the candidate be recommended for hire to the Board.

51 All decision-makers in D20 that decided to hire Mr. Slater, instead of Ms. Knapp were aware of her participation in protected activity.

52 Decision-makers in the D20 hiring process are indicated in D20 policies as building-level administrators, Human Resources Assistant Superintendent Dr. David Peak, and Superintendent Mark Hatchell.

53 Dr. Hatchell and Dr. Peak were named by Ms. Knapp to the Board of Education in emails as "failing to rehire" Ms. Knapp following her protected activity in the D20.

54 The Board President, Linda Van Matre told Ms. Knapp that she should direct all concerns to the District's legal counsel, Mr. Bob Cohn.

55 Dr. Bramshreiber told Ms. Knapp that the way he makes hiring decisions is to "look at resumes" to compare the candidates, and then he "looks at needs" and asks "do the strengths match up to the needs" in the position.

56 The qualities Ms. Knapp's resume and application show are experience teaching World Literature, college-preparatory writing, literary analysis, and African American literature, among numerous other required and preferred qualities.

57 Ms. Knapp's employment records used by the D20, the Defendant, show over 16 years of experience teaching English Language Arts.

58 Ms. Knapp, a female, was not hired, and relevant records used in the standard hiring procedure showed evidence that she met all of the criteria for the open position.

59 In comparison to Ms. Knapp's and application, Mr. Slater, application shows that he is inferior to Ms. Knapp because his resume and application show that he possessed none of the qualities in the vacancy.

60 Dr. Bramshreiber told Ms. Knapp she was a "very, very strong candidate" and that when selecting a candidate for a positions he "matches strengths to needs" to determine which candidate is best for the position.

61 Dr. Bramschreiber, other decision-maker(s) or all of them recommended Mr. Slater for hire.

All of the decision-maker(s) involved in the decision to fail to hire Ms. Knapp, and to hire Mr. Slater, instead, were aware her protected activity.

62 Mr. Slater did not hold an "initial or a professional teacher's license" at the time he was interviewed and at the time the Board approved his hire in August 2015.

63 Ms. Knapp held a "Teaching License" that was an "initial license" at the same time.

64 Assistant Superintendent Dr. David Peak and Human Recourses Director Rick Tanski gave a presentation to the D20 Board and other D20 Administrators in August 2015 regarding teacher licensing.

65 Dr. Peak an Mr. Tanski's presentation explained the way that D20 is allowed to hire unlicensed individuals that have not received the "necessary training" and have not developed the "necessary skills" to be a highly qualified teacher.

66 Dr. Peak and Mr. Tanski said that the "Teacher in Residence Program" was an "Alternative" way that a person that did not learn how to be a teacher when they earned a degree, can go back to school to learn how to be a teacher.

67 Mr. Slater agreed in his "Instructor Contract" to attend a "program" that would give him the skills he lacked for the open position.

68 He would require a teacher holding an "initial or professional" license to oversee and help him as a mentor while he learned how to be a teacher at DCC, and had to agree to work under the direct supervision of the principal while doing "on the job training".

69 The presenters, in the August 2015 Board meeting, cited    C.R.S. 22-63-201(1) ,and said "…board of a school district shall not enter into an employment contract with any person as a teacher…unless such person holds an initial or a professional teacher's license…", and also said that the General Assembly has statutory provisions that will allow D20 to hire a teacher without an "initial or professional" Colorado Teaching License.

70 Mr. Tanski said that "the District follows statutes and State Board of Education rules because the District would like to put the best teachers in front of students.

71 The General Assembly created an "alternative" route to becoming a teacher to address subject areas in which a shortage of teachers exists.

72 Mr. Tanski and Dr. Peak's presentation showed that D20 was extending "recruiting efforts to Kansas" because for shortages of "SPED" teachers.   They also said that "World Language" teachers, including "immersion programs" were areas that were hard-to-fill areas.

73 Ms. Knapp held an initial "teaching license" because she had completed the necessary education to make her qualified to be a teacher, Mr. Slater did not possess these qualities.

74 D20 hiring policies state that "other criteria required to perform the duties in a specific teaching position "shall be determined by the needs of the vacant position"

75 During the hiring process, Ms. Knapp asked Dr. Bramschreiber if the candidate hired into the vacant position would be taking over the courses of the teacher that resigned, and Dr. Bramschreiber said "yes"; but did not tell Ms. Knapp the name of the teacher, or the courses to be taught.

76 Dr. Bramschreiber, has been an educator and leader in D20 for about 20 years, holds a PhD in "Philosophy of Education", and had signed the "appointment" agreement for the 2015-16 school year in July of 2015 agreeing to abide by all state and federal laws, rules, and district policies in his position.

77 Ms. Knapp told Mr. Bramschreiber in the interview about her sensitivity to the high number of suicides amongst DCC students, and that how she would use her skills to mentor students and focus on social-emotional needs of students.

78 Mr. Bramschreiber told Ms. Knapp he believed that she "built relationships with students" and "did everything [she] could do for [students]"

**REQUEST FOR RELIEF**

Plaintiff requests the following relief:

a.  Nominal damages;
b.  Instatement and back pay, including loss of benefits and seniority, or front pay in lieu of reinstatement;
c.  Liquidated damages;
d.  Injunctive relief;
e.  Pre-and post-judgement interest at the highest rate allowed by law;
f.  Costs and reasonable attorney's fees; and;
g.  All other legal or equitable relief to which Plaintiff is entitled.

**JURY DEMAND**

**Plaintiff requests this matter be tried by a jury.**

Respectfully submitted,
May 31, 2017

*Melanie Knapp*
June 7, 2017

*Melanie Knapp*
(Plaintiff's Original Signature)

4420 Old Ranch Road
(Street Address)

Colorado Springs Co, 80908
(City, State, ZIP)        Black Forest

719-310 4459
(Telephone Number)